UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            Case No. 11-mj-30363

v.                                          Magistrate Judge R. Steven Whalen

ERIC EVAN MILLER, #45990-039

        Defendant.
_____/

**OPINION AND ORDER**

**I.    BACKGROUND**

Defendant Eric Miller is charged with possession of a dangerous weapon in a federal court facility, 18 U.S.C. § 930(e)1). At his initial appearance, the government requested, and the Court ordered a competency evaluation pursuant to 18 U.S.C. §§ 4241-4247. Mr. Miller was designated to the Metropolitan Correctional Center in Chicago, IL, where he was evaluated by Dr. David Szyhowski, Psy.D, a forensic psychologist. Dr. Szhowski filed a written report opining that Mr. Miller was not legally competent to proceed. The Court held a competency hearing pursuant to 18 U.S.C. §§ 4241(c) and 4247(d), and found that Mr. Miller was presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense [Doc. #23]. The Court ordered, pursuant to 18 U.S.C. § 4241(d), that Mr. Miller be committed to the custody of the Attorney General, to be hospitalized for treatment in a suitable facility to determine whether there was a substantial probability that in the foreseeable future Mr. Miller would be restored to competency. *Id*.

Mr. Miller was admitted to the United States Medical Center for Federal Prisoners in Springfield, MO. Following a period of treatment and evaluation, Dr. Christina A. Pietz, a forensic psychologist, filed a report indicating that (1) Mr. Miller was still not competent; (2) he had refused to consent to treatment with antipsychotic medication as recommended; and (3) treatment with psychotropic medication would have a substantial probability of improving his mental condition to the point where he would become competent to proceed with his present legal case. A hearing was requested pursuant to *Sell v. United States*, 539 U.S. 166 (2003), to determine if Mr. Miller should be involuntarily medicated.

A *Sell* hearing was held on November 29, 2012, by videoconference from the Springfield facility. Dr. Pietz and Dr. Robert Sarrazin, M.D. testified.

Dr. Pietz is Mr. Miller's primary clinician, and she made the determination that it would be necessary to medicate him in order to bring him to competency. *Transcript of 11/29/12*, 9-10.[1] She testified that Mr. Miller's diagnosis was paranoid schizophrenia and bipolar disorder with psychotic features. *Id.* 11. She opined that Mr. Miller is out of touch with reality, and has a tendency to engage in grandiose delusions. *Id.* 12.[2] She opined that Mr. Miller could not be restored to competency unless he were properly medicated. She said that individual or group therapy would be inappropriate, and that Mr. Miller would not respond to those simple interventions. She stated, "He has a chemical imbalance. Consequently, he needs to be properly medicated in order for that particular illness to be rectified." *Id.* 14. Dr. Pietz testified that Mr. Miller was in a locked unit because the staff was

---

[1] Dr. Pietz also submitted a written report, which the Court has reviewed, along with Mr. Miller's records from the Wayne County Jail.

[2] At the time of the hearing, Dr. Pietz did not have Mr. Miller's records from the Wayne County Jail. Those records were subsequently provided to her. After reviewing the records, she informed the Court that her opinions as expressed at the hearing were unchanged.

concerned that he may try to harm them or another inmate at the facility. *Id*.

Dr. Pietz testified that although she and other staff had asked Mr. Miller to take appropriate medication, he consistently refused to do so. *Id.* 18. She said that once he was medicated, he could participate in an educational group to discuss courtroom procedures, but he would have to be medicated first to attempt to restore competency. *Id*. 20. She clearly sated that based on her training and experience, there are no alternative to effective treatment other than forceable medication in order to restore Mr. Miller to competency, and that her proposed course of treatment would be in Mr. Miller's best interest. *Id*. 22-23.

Dr. Sarrazin is the Chief of Psychiatry at the U.S. Medical Center for Federal Prisoners. *Id.* 34. He agreed with the diagnosis that Dr. Pietz testified to, i.e., bipolar disorder with psychotic features. His proposed treatment plan for Mr. Miller would be based on the Court's approval for involuntary medication. Dr. Sarrazin discussed a number of second generation and first generation psychiatric medications. Both, he said are equally effective. However, the second generation drugs tend to have fewer side effect. *Id*. 44. The second generation drugs, which are available as oral medications, include Risperidal, Geodon, and Abilify. *Id.* 40. These medications have fewer motor side effects such as stiffness, tremor or akathisia (internal restlessness). He testified that Risperidal has a potential risk of raising blood glucose, but that risk seems to be less with Geodon and Abilify. Given that Mr. Miller is diabetic, Dr. Sarrazin testified that he would like to start with one of those two medications. *Id*. 41-42. More specifically, he would start with Geodon. *Id.* 43. He also stated that even Haldol, a first generation drug, would not conflict with Mr. Millers diabetic medications. *Id.* 45. A component of the treatment plan would also be monitoring blood glucose an and other medical conditions. He stated that Mr. Miller would be monitored 24 hours per day, and that in addition to 24-hour nursing staff, other professionals are on call,

and there are ambulance services to transport inmates to area hospitals if necessary. *Id.* 45-47

Dr. Sarrazin testified that if Mr. Miller were not willing to take the oral medication voluntarily, the next step would be to use immediate acting intramuscular medications. The two such medications available are Haloperidol (Haldol) and Geodon. In addition, of the two, only Haloperidol is available in long acting injectable form. Therefore, he would begin with an immediate acting injectable. This would also insure that Mr. Miller did not have a significant reaction to the medication before moving to the long acting form. *Id.* 48-49.

In terms of side effects of Haloperidol, Dr. Sarrazin testified that there is not necessarily any greater risk than if he started with Geodon. While, as a first generation drug, Haloperidol does present some possible additional issues with side effects such as stiffness and tremors, he would also administer Cogentin, which counteracts those side effects. *Id.* 50-51. He testified that other side effects are exceedingly rare. *Id.* 52. Dr. Sarrazin testified that in his medical opinion, the plan of treatment and the medications he described, in the dosages he described, would be in Mr. Miller's best medical interest, and that the benefits Mr. Miller would receive would far outweigh the risks and side effects. He reiterated that Mr. Miller would be closely monitored for side effects and adjustments would be made as necessary. *Id.* 56.

Mr. Miller respectfully addressed the Court at the hearing, and expressed his concerns. *Id.* 69-77. He stated that if the Court were to order him to take oral medications, including oral Geodon, he would do so. *Id.* 72, 76. At oral argument on January 14, 2013, he confirmed that he would take the medication if ordered to do so.

## II.  DISCUSSION

In *Unites States v. Sell, supra*, 539 U.S. at 179, the Supreme Court held that under the Due Process Clause, "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." In making a determination as to whether involuntary medication is permitted, the Court considers whether the following factors have been met: (1) there must be an important governmental interest at stake; (2) involuntary medication must significantly further that interest; (3) the Court must find that involuntary medication is *necessary* to further that interest, and that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results;" and (4) the Court must conclude that administration of the drugs is medically appropriate, i.e., "in the patient's best medical interest in light of his medical condition." *Id*. at 180-181. As to this last factor, the Court considers the side effects and the potential level of success of the medication. *Id*.

As to the first factor, the government has an important interest in the enforcement of criminal statutes, and in bringing an accused to trial. *Sell*, at 180. Moreover, the government has an important interest in assuring that a defendant receives a fair trial at which he may assist in his own defense. The first factor–an important governmental interest–has been met.

As to the second factor, the testimony of Dr. Pietz and Dr. Sarrazin establishes that the antipsychotic medication discussed is likely to render Mr. Miller competent. Dr. Sarrazin's testimony establishes that, particularly with regard to the second generation medications, possible side effects should be minimal and easily controllable. This is

especially so with oral Geodon, which would have a lesser possibility of affecting Mr. Miller's diabetic condition. Even with long acting injectable Haloperidol, side effects can be counteracted by administering Cogentin. Moreover, Mr. Miller would be constantly monitored and the medications adjusted as necessary to prevent side effects or other medical issues. The second factor has been met.

The testimony of Dr. Pietz establishes that given Mr. Miller's diagnosis, including the fact that he has a chemical imbalance, there is no lesser intrusive modality of treatment–such as individual or group therapy–that would be effective. In Dr. Pietz's view, medication is the only treatment that would achieve competency. Dr. Sarrazin agreed that a course of treatment with medication was necessary. The only alternative to involuntary medication is *voluntary* medication by Mr. Miller. In fact, Mr. Miller stated at the hearing that if the Court ordered him to take medication, he would do so. Therefore, if Mr. Miller agrees to voluntarily take the oral medication prescribed by Dr. Sarrazin, an order to involuntarily medication will not be necessary. If he does not so agree, however, then the third *Sell* factor will have been met.

Finally, Dr. Sarrizen clearly testified that the first and second generation drugs he discussed, as well as his proposed plan of treatment, are in Mr. Miller's best medical interests in light of his medical condition. He also testified that the benefits to Mr. Miller of the medications he discussed far outweigh the potential risks, which he opined were minimal.

Therefore, all four *Sell* factors have been established, and Mr. Miller may be involuntarily medicated without offense to the Due Process Clause.

### III.    CONCLUSION AND ORDER

For these reasons, the Court ORDERS as follows:

(1) Mr. Miller will comply with the directions of Dr. Pietz, Dr. Sarrazin, or any medical providers working under their supervision, to take oral Geodon or any other second

generation antipsychotic medication testified to by Dr. Sarrazin, over whatever time period Dr. Sarrazin deems medically appropriate. Mr. Miller will also comply with whatever non-medication related treatment modalities directed by Dr. Pietz or Dr. Sarrazin.

(2) If Mr. Miller does not comply with this Court's Order that he voluntarily take oral second generation antipsychotic medication as set forth above, he shall be involuntarily medicated with injectable long acting and/or immediate acting first or second generation antipsychotic medication as discussed in this Opinion and Order and testified to by Dr. Sarrazin.

(3) A psychiatric or psychological report shall be filed with the Court within 45 days of the Medical Center's receipt of this Order. The report shall comply with 18 U.S.C. § 4247(c), and include (1) defendant's history and present symptoms; (2) a description of the psychological, psychiatric and medical tests that were performed, and the medications that were administered, and their results; (3) the examiner's findings; (4) the examiner's opinions as to diagnosis, prognosis, and whether the defendant is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense; and (5) if there is a substantial probability that the defendant will attain the capacity to permit the proceedings to go forward. *See* 18 U.S.C. § § 4241(b)( and (d).

(4) The examiner will file the written report with this Court and provide copies of the report to defense counsel and the attorney for the government. The report may be used only for the purpose of determining competency. Statements made by the defendant in the course of the psychological examination are not admissible unless the defendant raises the defense of insanity.

(5) A competency hearing shall be held within 30 days of the date of the report.

(6) The period of time from the date of this Order to the conclusion of the competency hearing shall be deemed excludable delay under the Speedy Trial Act, 18 U.S.C. §§ 3161(h)(1)(A) and (h)(1)(F).

IT IS SO ORDERED.

                                          **s/ R. Steven Whalen**
                                          R. STEVEN WHALEN
                                          UNITED STATES MAGISTRATE JUDGE

Dated: March 7, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 7, 2013.

| | |
|---|---|
| Eric E. Miller #45990-039<br>MCFP Springfield<br>Medical Center/Federal Prisoners<br>P.O. Box 4000<br>Springfield, MO 65801 | Robert Sarrazin, Ph.D.<br>United States Medical Center for Federal Prisoners<br>1900 W Sunshine<br>Springfield, MO 65807<br>Email: RSarrazin@bop.gov |
| Christina A. Pietz, Ph.D., ABPP<br>United States Medical Center for Federal Prisoners<br>1900 W Sunshine<br>Springfield, MO 65807<br>Email: CPietz@bop.gov | |

                                          s/Johnetta M. Curry-Williams
                                          Case Manager